UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

JOHN CASEY GRIFFIN and
BRITTANY R. GRIFFIN,

    Debtors.

Case No. 18-12568-tr7

DERRICK E. HENDRICKS and
KIMBERLY L. HENDRICKS,

    Plaintiffs,

v.

Adv. No. 19-01053-t

JOHN CASEY GRIFFIN and
BRITTANY R. GRIFFIN,

    Defendants.

## OPINION

Plaintiffs Derrick and Kimberly Hendricks leased a house to Defendants John and Brittany Griffin. Two years into a five-year lease, the Griffins moved out of the house, leaving it in disrepair. The Hendrickses sued the Griffins in state court for breach of lease and obtained a $24,735 judgment. They now ask the Court to declare the judgment nondischargeable under § 523(a)(6).[1,2] Before trial, the Court allowed the lawyer for Mr. Griffin to withdraw, due to lack of communication. Mr. Griffin did not appear at trial or otherwise defend, so the Court will enter a

---

[1] All statutory references are to 11 U.S.C. unless otherwise indicated.
[2] The Hendrickses, proceeding pro se, did not request relief under this specific subsection. Their initial complaint was styled as a "Motion for Objection to Discharge." By the time of trial, the Griffins had received their discharge and the Hendrickses were asking to be awarded the amount from the state court judgment. The Hendrickses frequently returned to the theme of the Griffins violating their trust and breaching the lease agreement. However, given the facts, an exception to discharge for willful and malicious tortious injury to property under § 523(a)(6) is the only possible basis for nondischargeability.

default judgment against him. However, the Hendrickses failed to prove their case against Mrs. Griffin, who did appear at trial and defend against the claim. Her judgment debt to the Hendrickses will be declared dischargeable.

I. FACTS

The Court finds:

The Hendrickses met the Griffins in 2007. The Hendrickses owned and lived in a house in Roswell, New Mexico, with a street address of 1107 E. 19th Street. The house is adjacent to a roofing company owned by members of the Griffin family. Mr. Griffin worked at the roofing company for a time. In 2008 the Hendrickses agreed to let the Griffins and their two small children move a mobile home onto land near the house. The parties thus became next-door neighbors.

Beginning in 2014, the Hendrickses had to leave town frequently to care for aging parents. They moved out of the house. The parties disagree about whose idea it was, but in 2015 the Griffins rented the house from the Hendrickses and moved in. Rental negotiations culminated in a Residential Lease Agreement with Option to Purchase, which the parties signed on or about September 1, 2015. The lease gave the Griffins the option to buy the house for $190,000. During the first year or so of the lease term, the Griffins intended to buy the house.

When the Griffins moved in the house was old[3] but in good condition; it had been in the Hendrickses' family for many years and they took pride in its upkeep. The first seventeen months of the Griffins' tenancy passed without incident. On February 14, 2017, however, Mrs. Griffin moved out, citing marital problems and concern for her safety. On March 26, 2017, Mr. Griffin threatened to commit suicide. Mrs. Griffin and her father-in-law were alerted to the threat and rushed the house. It was locked, so they broke a window and forced the back door, damaging the

---

[3] Mr. Hendricks testified that the house was about 100 years old.

door and the frame. Mr. Griffin, who was uninjured, had to spend time under psychiatric care and stopped contributing to the marital income.

In May 2017 Mrs. Griffin moved into an apartment with the children. She paid rent on the house through August 2017. Mr. Griffin moved out of the house before August 2017.

On August 5, 2017, an acquaintance of the Hendrickses went by the house, saw it was vacant, and notified the Hendrickses. When the Hendrickses inspected the house they found:

- A broken HVAC heat pump;
- A broken refrigerator;[4]
- Broken windows;
- Stained carpets and wooden floors;
- Ripped wallpaper and sheetrock damage;
- Damage to a garage wall;
- Damage to interior doors;
- Damage to an exterior door and door frame;
- Damage to some of the soffits;
- Damage to an above-ground swimming pool;
- An electric service pole in the back yard that was leaning over;
- Damage to a natural gas line between the gas meter and the house;
- Grass in large portions of the yard had not been watered and had died; and
- A substantial amount of junk, debris, and trash.

The Griffins and the Hendrickses discussed the condition of the house several times after August 5, 2017. The Griffins agreed they would clean up the house and yard. Aside from mowing,

---

[4] Care of the refrigerator fell to the Griffins under the lease.

Mr. Griffin never did anything. Then, on August 17, 2017, the Griffins' son became seriously ill. He was flown by air ambulance to Lubbock, Texas for emergency treatment and was hospitalized for several weeks. During that time Mrs. Griffin focused solely on her son, stayed with him in Lubbock, and made no attempt to clean or repair the house. After her son was out of danger and they were both back in Roswell, Mrs. Griffin essentially washed her hands of the matter. The upshot was that the Hendrickses were forced to do all of the cleaning, repairing, and junk-hauling.

The Hendrickses sued the Griffins in state court on October 6, 2017. The state court held a trial on September 5, 2018, and entered a money judgment in the Hendrickses' favor for $24,735.34. Although the Hendrickses provided this Court with two pages of the trial transcript, none of the court's findings of fact or conclusions of law are in evidence.

The Griffins filed their chapter 7 case on October 15, 2018, prompting this adversary proceeding. The Griffins' bankruptcy attorney answered the complaint on their behalf but later withdrew from representing Mr. Griffin, citing an inability to communicate with him (he moved to Tennessee after the § 341 meeting and stopped responding to counsel). Mr. Griffin did not appear at trial or make any other effort to defend.

## II. DISCUSSION

A. The Hendrickses Are Entitled to a Default Judgment Against Mr. Griffin.

Fed. R. Civ. P. 55[5] governs defaults and default judgments and states in part:

(a) Entering a Default. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.
(b) Entering a Default Judgment.
    (1) By the Clerk. If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk--on the plaintiff's request, with an affidavit showing the amount due--must enter judgment for that amount and costs

---

[5] Made applicable to adversary proceedings by Fed. R. Bankr. P. 7055.

> against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.
> (2) By the Court. In all other cases, the party must apply to the court for a default judgment….If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:
> (A) conduct an accounting;
> (B) determine the amount of damages;
> (C) establish the truth of any allegation by evidence; or
> (D) investigate any other matter.

Most circuits have interpreted "or otherwise defend" in Fed. R. Civ. P. 55(a) to mean that a defendant's conduct after answering the complaint, and in particular the failure to appear at trial, can be grounds for default. *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 917–19 (3d Cir. 1992) (citing *Farzetta v. Turner & Newall, Ltd.*, 797 F.2d 151 (3d Cir. 1986)); *Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Intern., Inc.*, 982 F.2d 686, 692–93 (1st Cir. 1993); *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 127–31 (2d Cir. 2013); *see generally* Gregory A. Kendall, *Defendants' Burdens Under Fed. R. Civ. P. 55: Post-Answer Defaults and Jurisdictional Waivers in* City Of New York v. Mickalis Pawn Shop, 81 U. Cin. L. Rev. 1079 (2013) (citing additional caselaw).

Courts in this district have held that they, as well as the clerk, may enter a party's default. *See Nevada General Insurance Co. v. Anaya*, 326 F.R.D. 685, 690–91 (D.N.M. 2018) (citing *Mickalis Pawn Shop*); *Tratt Industries, LLC v. Patterson*, 2019 WL 4919098, at *4 (D.N.M.) (same). When a default is entered, all well-pled allegations in the complaint other than damages allegations are accepted as true. *Anaya*, 326 F.R.D. at 693 (citing *U.S. v. Craighead*, 176 F. App'x 922 (10th Cir. 2006)). Further, where the damages requested are a sum certain, the court need not "receive evidence on the claimed damages amount before entering a default judgment; rather, the Rule [55(b)] simply allows the district court to conduct a hearing if it believes that additional

investigation or evidence is necessary." *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1172 (10th Cir. 2011); *see also Adkins v. Manning*, 2018 WL 6436057, at *1 (D. Kan.).

Mr. Griffin knew the nature of the Hendrickses' complaint against him and the relief sought. He knew of the trial date, time, and location and that his counsel had withdrawn. Mr. Griffin never contacted the Court about the trial date, to ask for a continuance or similar relief, or to appear by telephone. Because Mr. Griffin decided not to appear at trial, the Court will enter a default against him. The consequence of the default is that the Hendrickses' § 523(a)(6) claim against Mr. Griffin is established. As the amount of the debt is certain, the Court will enter a default declaratory judgment that the debt is nondischargeable.[6,7]

B.  Mrs. Griffin's Judgment Liability to the Hendrickses is Dischargeable.

1.  The Court has Exclusive Jurisdiction to Determine the Dischargeability of the Judgment. As a general principle, state court judgments have preclusive effect on subsequent actions in federal court. 28 U.S.C. § 1738;[8] *Allan v. McCurry*, 449 U.S. 90, 95 (1980). The "full faith and credit" statute "requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the state courts from which they emerged." *Strickland v. City of Albuquerque*, 130 F.3d 1408, 1411 (10th Cir. 1997). By obtaining the state

---

[6] The Court believes that Mr. Griffin's knowledge of the complaint and the trial satisfies the notice requirement of Fed. R. Civ. P. 55(b)(2). Alternatively, the Court applies the judicial gloss employed by several sister circuits holding that notice requirements under Fed. R. Civ. P. 55(b)(2) are unnecessary when the court enters default sua sponte or when a defendant fails to appear at trial. *Goldman*, 982 F.2d at 692–693; *Anilina Fabrique de Colorants v. Aakash Chemicals and Dyestuffs, Inc.*, 856 F.2d 873, 877 (7th Cir. 1988); *Ringgold Corp. v. Worrall*, 880 F.2d 1138, 1141–42 (9th Cir. 1989); *Brock v. Unique Racquetball and Health Clubs, Inc.*, 786 F.2d 61, 65 (2d Cir. 1986).
[7] The debt includes post-judgment interest at 8.75%.
[8] Also referred to as the "full faith and credit" statute.

-6-
Case 19-01053-t    Doc 24    Filed 02/28/20    Entered 02/28/20 10:38:43 Page 6 of 11

court judgment, the Hendrickses established a valid claim against Mrs. Griffin for the judgment amount. *See Welch v. Giron (In re Giron)*, 610 B.R. 670, 674–75 (Bankr. D.N.M. 2019).

However, the question of dischargeability is separate from the validity of the debt. *See Brown v. Felson*, 442 U.S. 127 (1979). This Court has exclusive jurisdiction to determine whether the judgment against Mrs. Griffin is dischargeable in her bankruptcy case. *Id.*; *In re Crespin*, 551 B.R. 886, 896–97 (Bankr. D.N.M. 2016).

The Hendrickses could resort to the doctrine of issue preclusion, which bars "successive litigation of [1] *an issue of fact or law* [2] *actually litigated and resolved* in a valid court determination [3] *essential* to the prior judgment, even if the issue recurs in the context of a different claim." *In re Zwanziger*, 741 F.3d 74, 77 (10th Cir. 2014) (citing *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)) (emphasis in original). Issue preclusion often may be invoked in a subsequent bankruptcy case when an issue has been previously litigated in state court. *Giron*, 610 B.R. at 675–76. Here, however, the Court does not have the benefit of the state court's findings, so issue preclusion is not an option for the Hendrickses or the Court.

2. §523(a)(6) Nondischargeability for Willful and Malicious Injury to Property.[9]

Section 523 provides in pertinent part:

(a) A discharge under…this title does not discharge an individual debtor from any debt…
    (6) for willful and malicious injury by the debtor to another entity or to the property of another entity….

"The standard for a successful claim under § 523(a)(6) is a stringent one." *Pino v. Jensen (In re Jensen)*, 2019 WL 2403105, at *11 (10th Cir. B.A.P.). "To prevail under § 523(a)(6) a

---

[9] The Hendrickses did not specify which nondischargeability provision of § 523 they rely upon. Their complaint does not even mention § 523. Nevertheless, a review of the complaint makes it clear that § 523(a)(6), and only that subsection, is at issue in this proceeding. *See also* n.2, *supra*.

creditor must prove: (1) either he or his property sustained an injury; (2) the injury was caused by the debtor; (3) the debtor's actions were 'willful;' and (4) the debtor's actions were 'malicious.'" *Nelson v. Bolles (In re Bolles)*, 593 B.R. 832, 843 (Bankr. D.N.M. 2018) (Citing *In re Deerman*, 482 B.R. 344, 369 (Bankr. D.N.M. 2012)).

"To be willful, a debtor must have intended both the act and the resulting harm." *Id.*; *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) ("The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."). The Tenth Circuit applies a subjective standard, meaning the debtor herself "must have wished to cause injury or at least believed it was substantially certain to occur." *Via Christi Reg'l Med. Ctr. v. Englehart (In re Englehart)*, 2000 WL 1275614, at *3 (10th Cir. 2000).

"For a debtor's actions to be malicious, it must be intentional, wrongful, and done without justification or excuse." *Bolles*, 593 B.R. at 843.

3. <u>With Two Exceptions, the Hendrickses Did Not Prove Mrs. Griffin Acted Willfully</u>. The Court finds that, for the most part, Mrs. Griffin either did not damage the house or did not do so willfully.

For example, there is no evidence the refrigerator and HVAC system stopped working or otherwise suffered damage because of any act of Mrs. Griffin. Similarly, Mrs. Griffin testified that the electric power pole is old and rotten and began leaning over of its own accord, not because of anything she did. Mrs. Griffin disputes that they or their pets caused the carpet stains the Hendrickses' complain about. The damage to the soffits appears to have been caused by rain and weather, not by the Griffins. Likewise with the damage to most windows, the flooring, the garage

wall, the swimming pool, or the gas line and riser: there is no evidence that Mrs. Griffin caused any of this damage, let alone that she did so willfully.

One exception is the damage resulting from the Griffins' attempt to renovate or remodel the bathroom. The Griffins removed the wallpaper and some of the wallboard in a bathroom, as part of an inept and incomplete attempt to remodel it. It seems fair to conclude that Mrs. Griffin intended to remove the wallpaper and wallboard and intended the resulting harm (which was supposed to be temporary).

The other exception is the damage caused to the window and back door and frame when Mrs. Griffin forced the door open the day Mr. Griffin threatened to kill himself. That damage, albeit done for good motives, was intentional.

4. <u>The Hendrickses Did Not Prove Mrs. Griffin Acted Maliciously</u>. Although there were two instances of intentional damage, the Hendrickses did not prove that any of Mrs. Griffin's actions were malicious. Rather, in the two instances where Mrs. Griffin damaged the house willfully (removing the wallpaper and forcing the back door/window), her actions were justifiable and well intentioned, not malicious. In the other instances of damage, the Hendrickses failed to prove either willfulness or maliciousness on Mrs. Griffins' part.

The Court has examined the record and does not find a single instance where Mrs. Griffin willfully and maliciously damaged the house. Her judgment debt to the Hendrickses therefore will be declared dischargeable.[10]

C. <u>Mrs. Griffin Cannot Recover Attorney Fees From the Hendrickses</u>.

---

[10] The Hendrickses spent a lot of trial time pointing out Mrs. Griffin's failure to follow through on her promise to fix the house. The Court agrees she should have done more to repair the damage and haul off the debris. Nevertheless, the Hendrickses cannot bootstrap Mrs. Griffin's failure to fix the damage, which was not willful and malicious, into a willful and malicious injury.

At trial, Mrs. Griffin asked for an award of her attorney fees incurred defending the proceeding. Her request must be denied. "Our basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Baker Botts L.L.P. v. Asarco LLC*, 135 S. Ct. 2158, 2164 (2015) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–53 (2010)).

In support of her attorney fee claim Mrs. Griffin points to a fee shifting provision in the lease:

> In the event that any action is filed in relation to this Lease, the unsuccessful Party in the action will pay to the successful Party, in addition to all the sums that either Party may be called on to pay, a reasonable sum for the successful Party's attorney fees.

The argument fails because the Hendrickses' nondischargeability action did not relate to the lease. The Hendrickses brought the proceeding to declare their state court judgment nondischargeable, not the Griffins' lease obligations. They did so because when the state court entered its judgment, the lease merged into the judgment and no longer bound the parties. *See, e.g., First American Title Ins. Co. v. Smith (In re Smith)*, 605 B.R. 538, 544–45 (Bankr. D. Utah 2019) (plaintiff's § 523(a)(6) proceeding was not based on its employment agreement with debtor, which agreement had merged into a state court judgment, but for tortious conduct debtor allegedly committed while under the employment agreement's obligations); *Jackson Lumber, Inc. v. Heath (In re Heath)*, 2011 WL 2566506, at *2 (Bankr. D. Idaho) (to the same effect); *see also WLC Enterprises, Inc. v. Rylant (In re Rylant)*, 594 B.R. 783, 788–89 (Bankr. D.N.M. 2018) (§ 523(a)(6) proceedings generally relate to torts; breach of contract cases rarely come within § 523(a)(6)).

Here, the Hendrickses could not have brought a §523(a)(6) proceeding related to the lease, and therefore could not have recovered attorney fees had they been successful. The reverse is equally true. Mrs. Griffin's attorney fee claim must be denied.

### III.    CONCLUSION

The Hendrickses are entitled to a default declaratory judgment against Mr. Griffin. Their claim against Mrs. Griffin fails because they did not prove she acted willfully and maliciously when she allowed the house and yard to fall into disrepair. Each party will bear its own costs and attorney fees. The Court will enter a separate judgment.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: February 28, 2020

Copies to: Counsel of record

Derrick and Kimberly Hendricks
1107 E. 19th Street
Roswell, NM 88201

John Casey Griffin
504 La Fonda Drive
Roswell, NM 88201